**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

DEBI JEAN LAMB,

Plaintiff,

v.

CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security

Defendant.

**1:13-cv-00137 GSA**

**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**

**INTRODUCTION**

Plaintiff Debi Jean Lamb ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits under Title II of the Social Security Act. The matter is pending before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 8 & 10.

## THE ADMINISTRATIVE PROCEEDING

### A. The Sequential Disability Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). Put another way, a claimant is disabled if medically determinable impairments preclude her from performing her prior work activities as well as any other work available in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is required to follow a five-step sequential evaluation process. This process proceeds via a series of inquiries as follows:

> (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, the ALJ proceeds to step two.
>
> (2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, the ALJ proceeds to step three.
>
> (3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, the ALJ proceeds to step four.
>
> (4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to step five.
>
> (5) Does the claimant's residual functional capacity, when considered with the

> claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Molina*, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B. Background and Summary of the ALJ's Decision**

On June 15, 2009, Plaintiff filed a Title II application for disability insurance benefits under the Social Security Act, alleging disability beginning on April 8, 2005. Administrative Record ("AR") 13. On June 21, 2011, an administrative law judge ("ALJ") conducted a hearing on Plaintiff's claim. AR 38-65. In a written decision issued on August 17, 2011, the ALJ determined that Plaintiff was not disabled from April 8, 2005 through the date of his decision. AR 13-22. Specifically, the ALJ found: (1) Plaintiff suffered from the following severe impairments: fibromyalgia; musculoligamentous strain and spasm of the neck and shoulders; and spondylosis of the cervical spine; (2) Plaintiff's impairments, considered singly or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of light work as defined in 20 CFR 404.1567(b), with certain limitations including that "she cannot engage in overhead reaching with the bilateral upper extremities;"[3] and (4) Plaintiff was capable of performing her past relevant work as a real estate

[3] The ALJ determined that Plaintiff could: (1) perform light work; (2) sit, stand, and walk for six out of eight hours

clerk as this work did not require the performance of work-related activities precluded by the claimant's residual functional capacity as assessed by the ALJ. AR 15-22. The ALJ ended his disability analysis at step four of the sequential process because he determined that Plaintiff could perform her past relevant work as a real estate clerk.

On November 13, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 5-7. Plaintiff then commenced this action in District Court.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* In applying the substantial evidence test, courts review the record as a whole. *Lamb v. Mathews*, 546 F.2d 814, 818 n. 6 (9th Cir. 1976). Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

///

///

///

---

each with normal breaks; (3) lift and carry 20 pounds occasionally and 10 pounds frequently; (4) occasionally engage in pushing or pulling activities with the bilateral upper extremities; (5) and occasionally crawl. The ALJ further determined that Plaintiff could never climb ladders, ropes or scaffolds; could not engage in overhead reaching with the bilateral upper extremities; and must avoid prolonged and sudden movement of the head and neck areas. AR 18.

## DISCUSSION

### A. Issue Presented for Review

Plaintiff argues that the ALJ committed reversible error in finding Plaintiff not disabled at step four of the sequential disability determination process. Specifically, Plaintiff challenges the ALJ's step-four finding that Plaintiff could perform her past relevant work of real-estate clerk in light of her RFC as assessed by the ALJ. The ALJ based his step-four finding on the testimony of a vocational expert ("VE"). The VE testified that a hypothetical person of Plaintiff's age, education, and experience, who had the same limitations as Plaintiff, could work as a real-estate clerk as that occupation is defined in the Dictionary of Occupational Titles ("DOT"). Plaintiff contends that the real-estate clerk job, as defined by DOT, requires frequent omni-directional reaching and, because Plaintiff's RFC precludes any overhead reaching, Plaintiff cannot perform this job. Plaintiff argues that the ALJ improperly relied on the VE's testimony because he did not resolve the inconsistency between the VE's testimony and the DOT's description of the physical demands of the real-estate clerk job. Therefore, Plaintiff argues, the ALJ's step-four finding contains legal error and is not supported by substantial evidence.

### B. Pertinent Facts

At step three of the sequential disability analysis, the ALJ determined Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 404.1567(b). Specifically, she can sit, stand, and walk for six out of eight hours each with normal breaks. She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can occasionally engage in pushing or pulling activities with the bilateral upper extremities. She should never climb ladders, ropes or scaffolds, but can occasionally crawl. *She cannot engage in overhead reaching with the bilateral upper extremities*, and must avoid prolonged and sudden movement of the head and neck areas.

AR 18 (emphasis added).

Next, at step four, the ALJ found that Plaintiff was not disabled because she could perform her past relevant work in light of her assessed RFC. Specifically the ALJ's step four determination was as follows:

> The claimant has past relevant work as a real estate clerk (219.362-046, sedentary, SVP 5) and a secretary (201.362-030, sedentary, SVP 6, medium as performed by claimant). These jobs are past relevant work because she performed them within 15 years of the date of this decision, worked for a sufficient length of time to learn the jobs, and earned at a level consistent with substantial gainful activity. 20 CFR 404.1560. The vocational expert testified that a person of the same age, education, and work history as the claimant, with the limitations described, would be able to perform the duties required of a real estate clerk. The undersigned finds no reason to disagree with or reject the testimony of the vocational expert, and finds that in comparing the claimant's residual functional capacity with the physical and mental demands of this work, she is able to perform the work of a real estate clerk as actually and generally performed.

AR 21. The ALJ ended the sequential disability analysis at step four and did not proceed to step five.

VE George Myers testified at Plaintiff's hearing. AR 60. At the outset of VE Myers' testimony, the ALJ instructed him as follows: "If there's anything you say different from the Dictionary of Occupation Titles or its supplement which are these big books we have to follow, would you please let us know?" AR 60. VE Myers answered: "Yes, I can." AR 60. The ALJ described a hypothetical person of the same age and education as Plaintiff, with the same work history and RFC as Plaintiff and asked whether such a person could do any of the past jobs that Plaintiff had performed. AR 61-62. The VE answered that such a hypothetical person "could still do the real-estate clerk" job. AR 62. The ALJ and the VE then had the following exchange:

> ALJ: Are there other jobs in the California economy that could be performed also?
>
> VE: Yes, Your Honor. Examples include telemarketer, 299.357-014, sedentary, semi-skilled, SVP-3, 17,000 State of California. Receptionist, 237.367-038, sedentary, semi-skilled, SVP-4, 41,000 state. General office clerk, 209.562-010, light, semi-skilled, SVP-3. I'm eroding the base by 50 percent due to the reaching above shoulder height and the occasional pushing/pulling, leaving 22,500 in the State of California.
>
> ...

ALJ: Is there anything you've told us today different from the Dictionary of Occupational Titles or its supplement that you have not fully explained for us already?
VE: No, Your Honor.

According to the DOT, the real-estate clerk job requires frequent "reaching."[4] *See* Doc. 14-1, Pltff.'s Op. Br., Exh. 1, at 3. The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), Appendix C (1993) defines "reaching," one of the factors used to assess the physical demands of various DOT occupational classifications, as follows: "Extending hand(s) and arms(s) in any direction."

**C. Pertinent Law**

The Social Security Administration relies on the DOT as the presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); Social Security Ruling ("SSR") 00-4p ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.").[5] Accordingly, an ALJ is required to identify any conflicts between occupational evidence provided by a VE and occupational information included in the DOT. SSR 00-4p. Indeed, the ALJ "has an affirmative responsibility to ask about any possible conflict between [VE evidence] and information provided in the DOT." *Id*. Furthermore, when vocational evidence provided by a VE is not consistent with information in the DOT, the ALJ "must resolve this conflict before relying on the [VE evidence] to support a determination or decision that the individual is or is not disabled." *Id*. The ALJ is required to explain in his decision how any identified conflict was resolved. *Id; see also Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir.

---

[4] Social Security Ruling 83-10 defines a work activity as "frequent" if it ranges from1/3 to 2/3 of the workday; *see also* The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), Appendix C (1993), which describes a work activity as "frequent" if it exists 1/3 to 2/3 of the time.

[5] Social Security Ruling 00–4p, available at 2000 WL 1898704. "[Social Security Rulings] reflect the official interpretation of the [Social Security Administration] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) (quoting *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n. 2 (9th Cir. 2005)).

2007) (SSR 00-4p "explicitly requir[es] that the ALJ determine whether the expert's testimony deviates from the Dictionary of Occupational Titles and whether there is a reasonable explanation for any deviation."

SSR 00-4p provides the following guidance regarding occupational evidence from a VE in relation to information included in the DOT:

> Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p further instructs that a VE can often provide an explanation for such conflicts because, for example, the DOT lists maximum requirements of occupations as generally performed but not the range of requirements of a particular job as it is performed in specific settings. Therefore, a VE may be able to provide more specific information about jobs or occupations than the DOT.[6] In sum, "the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles." *Massachi*, 486 F.3d at 1153.

///

///

[6] SSR 00–4p gives examples of several reasonable explanations for deviating from the DOT. Among them are that the DOT does not provide information about all occupations, information about a particular job not listed in the Dictionary may be available elsewhere, and the general descriptions in the Dictionary may not apply to specific situations.

**D. Analysis**

Here, the ALJ failed to identify the conflict between VE's testimony and information regarding Plaintiff's past relevant work of real-estate clerk included in the DOT. The VE testified that a hypothetical person with Plaintiff's RFC (i.e., one who is precluded from reaching overhead) would be able to perform Plaintiff's past relevant work as a real-estate clerk. The DOT states that the occupation of real-estate clerk typically requires frequent "reaching," which is defined as extending the arms in any direction. *See Mkhitaryan v. Astrue*, 2010 WL 1752162 at *3 (C.D. Cal. April 27, 2010) ("As defined in the [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles], the plain meaning of 'reaching' encompasses above-the-shoulder reaching."). A potential conflict thus exists between the VE's testimony and the DOT's description of the requirements of the occupational classification of "real-estate clerk," Plaintiff's past relevant work. *See Bermudez v. Astrue*, 2011 WL 997290 at *3 (C.D. Cal. March 21, 2011) (a potential conflict existed where a claimant's RFC precluded overhead reaching and the VE testified that the claimant could perform specific jobs but those jobs required "reaching" based on the DOT).

The Seventh Circuit specifically addressed this issue in *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). In *Prochaska*, the ALJ asked the VE for work that could be performed by someone who could only "occasionally reach above the shoulder level." *Id.* The VE testified that a person who could only occasionally reach above shoulder level could perform the job of "cashier." *Id.* However, "a cashier's requirements, under the DOT, include 'reaching' frequently." *Id.* The *Prochaska* court observed as follows:

> It is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help. We cannot determine, based on the record, whether the expert's testimony regarding … reaching was actually inconsistent with the DOT. That determination should have been made by the ALJ in the first instance, and his failure to do so should have been identified and corrected by the Appeals

> Council. We will defer to an ALJ's decision if it is supported by "substantial evidence," but here there is an unresolved potential inconsistency in the evidence that should have been resolved. We vacate the district court's judgment upholding the Commission[er]'s decision and remand this case so that the ALJ can determine whether the job requirements identified by the vocational expert are, in fact, consistent with the definitions in the DOT and Prochaska's limitations.

*Prochaska*, 454 F.3d at 736 (citations omitted).

In the instant matter, the ALJ similarly did not identify or resolve the potential inconsistency between the DOT's description that the "real-estate clerk" occupational classification involves frequent "reaching" and the VE's testimony that Plaintiff could perform this work in light of her assessed RFC which precluded overhead reaching. Furthermore, the record is devoid of relevant evidence that would resolve this potential inconsistency. Since the ALJ failed to resolve the potential inconsistency between the VE's testimony and the DOT's description of Plaintiff's past relevant work by eliciting a reasonable explanation from the VE regarding his deviation from the DOT, the ALJ could not rely on the VE's testimony, as he did, in making his step-four determination that Plaintiff was not disabled. *See* SSR 00-4p; *Massachi*, 486 F.3d at 1153-1154 (an ALJ can properly rely on the VE's testimony as substantial evidence to support a disability determination only after determining whether the VE has deviated from the DOT and whether the deviation is reasonable). Moreover, given that the ALJ's articulation of Plaintiff's RFC included a categorical limitation on overhead reaching, a reasonable explanation for the VE's deviation from the DOT and its companion publication, the SCO, would have to demonstrate that Plaintiff's past relevant work, at least in specific settings, does not require overhead reaching. *See Mkhitaryan*, 2010 WL 1752162 at *3.

Defendant argues that any error by the ALJ was harmless because he found that Plaintiff was capable of performing her past relevant work of real-estate clerk as actually and generally performed, and the VE's testified only with respect to how the occupation is generally performed. However, the record contains no information regarding how Plaintiff actually performed her past

relevant work of real-estate clerk. While Plaintiff continued to work at the time of the ALJ hearing as her husband's administrative assistant, the ALJ's step-four determination was based on Plaintiff's ability to perform the job of real-estate clerk, which Plaintiff had performed earlier in her career. There is no evidence in the record regarding how Plaintiff actually performed her prior job of real-estate clerk. Therefore, the ALJ's determination that Plaintiff was capable of performing her past relevant work as a real-estate clerk as she actually performed it is also not supported by substantial evidence. In sum, the ALJ's step-four determination that Plaintiff was not disabled because she could perform her past relevant work as a real-estate clerk as actually and generally performed is legally erroneous and not supported by substantial evidence.

Nonetheless, had the ALJ proceeded to step five of the sequential disability analysis, the Court possibly could have found the step-four error to be harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (ALJ's step-four finding that claimant could return to past relevant work was erroneous because he relied on VE testimony that deviated from DOT and ALJ did not resolve the inconsistency, but the error was harmless in light of ALJ's alternative finding at step five that claimant could still perform other work in the national and local economies); *Reynolds v. Astrue*, 252 Fed. Appx. 161, 165 (9th Cir. 2007) (ALJ's failure to make specific findings regarding the demands of claimant's past relevant work and claimant's ability to meet those demands was harmless error in light of ALJ's RFC assessment and step-five determination). Specifically, had the ALJ made a step-five determination that was consistent with Plaintiff's RFC, any step-four error would have been harmless. Here, the ALJ ended his analysis at step four and did not make a step-five finding to the effect that Plaintiff was capable of performing other jobs that existed in the national economy consistent with her RFC. Therefore, the Court cannot find that the ALJ's step-four error was harmless. *See, e.g., Baines v. Astrue*, 781 F. Supp.2d 228, 237-38 (D. Del. 2011). The *Baines* Court held as follows:

> In this case, the ALJ halted his analysis of Baines' claims at step four of the sequential evaluation. Erroneous step four findings can be rendered harmless by the identification of other work consistent with a plaintiff's RFC at step five; however, the ALJ never completed the alternative analysis by making the requisite findings regarding the vocational expert's testimony and its potential application to Baines. The Court cannot independently perform the step five analysis that would have been undertaken by the ALJ in the first instance but for his error at step four.

*Id.*

The Court finds that remand is appropriate for the ALJ to reevaluate his step-four determination and to possibly proceed to step five of the sequential disability analysis. *See Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999) ("[A] remand for further proceedings is the appropriate remedy when an erroneous step four determination has precluded any analysis under step five."); *Davis v. Astrue*, 2008 WL 852451, at *8 (D.N.J. Mar. 28, 2008) (concluding that ALJ erred at step four in finding that plaintiff could return to work as switchboard operator—because it was not clear that plaintiff worked in that position for more than 30 days as required by regulations—and remanding for further proceedings, including possibility of step five analysis by ALJ); *Bell v. Barnhart*, 2002 WL 31178223, at *2 (D.Kan. Sept. 30, 2002) (holding that Commissioner should have opportunity to perform step five analysis in first instance); *Garcia v. Colvin*, 2013 WL 3321509 (N.D. Ill. June 28, 2013) ("[W]e conclude that the ALJ's step four finding requires reversal. We reject the Commissioner's argument that the ALJ's step four finding is harmless error given the VE's testimony that Garcia could perform other work in the national economy. Not only are there other errors requiring remand here, the ALJ did not make a step five finding and we cannot simply "fill that gap.") (quoting *Getch v. Astrue*, 539 F.3d 473, 481 (7th Cir. 2008).

The Defendant contends that any step-four error was harmless nonetheless, because, although the ALJ did not make a step-five determination, the VE testified that Plaintiff was capable of performing other jobs—telemarketer, receptionist, and general office clerk—that

existed in the national economy. However, the other jobs identified by the VE—telemarketer, receptionist, and general office clerk—also require either frequent or occasional omni-directional reaching according to the DOT. Therefore, a potential inconsistency also exists between the VE's testimony regarding Plaintiff's ability to perform these jobs and the DOT's description of the requirements of these jobs. As a result, the VE's testimony that Plaintiff can perform these jobs in light of her RFC cannot be credited until this potential inconsistency is resolved.[7]

Accordingly, the Court reverses the ALJ's decision and remands the matter for the ALJ to reevaluate his step four determination, and if necessary, further develop the record by obtaining additional VE evidence to resolve the potential inconsistency between the VE's testimony that Plaintiff was capable of performing her past relevant work as a real-estate clerk and the DOT's description of the requirements of this occupation. In addition to reevaluating his step-four determination, the ALJ may also proceed to step five of the sequential disability analysis on remand, and may obtain additional VE evidence for that purpose if he deems it necessary.

///

///

///

[7] Plaintiff argues that the alternative occupations identified by the VE—telemarketer, receptionist, and general office clerk—are all semi-skilled occupations, and since the ALJ failed to identify in his decision which of Plaintiff's skills are transferrable [and to which occupations they would apply], it would be erroneous for the Court to find that Plaintiff was capable of engaging in these alternative occupations. Doc. 14, Pltff.'s Op. Br., at 12. The Commissioner, on the contrary, urges the Court to find that the ALJ's step-four error was harmless because VE testimony in the record demonstrates that Plaintiff had transferrable skills that would allow her to perform the alternative occupations. Doc. 13, Deft.'s Op. Br., at 15, n. 3. The Commissioner's argument is unavailing in light of *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009), which clarifies that an ALJ must make specific findings on transferable skills even when he relies on the testimony of a VE. Pursuant to *Bray* and to SSR 82-41, the ALJ must address the issue of the transferability of skills in the first instance. The ALJ failed to do so here and the Court cannot fill the gap.

**CONCLUSION**

The Court finds that the ALJ's decision contains legal error and is not supported by substantial evidence. Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security and REMANDS the matter to the Commissioner for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Debi Lamb and against Defendant Carolyn Colvin, the Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **August 1, 2014** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE